Okay this is a time set for argument in case 25-588 United States versus California State Water Resources Control Board. Good morning Mr. Turner. Good morning. May it please the court. Frederick Turner for the United States. I'd like to reserve five minutes for rebuttal time. The United States has waited seven years to have its intergovernmental immunity claim adjudicated in federal court. For the last two and a half of those years the claim has languished because of the district court's erroneous decision that the claim is not prudentially ripe. This court should reverse that decision. My time today I plan to address two points. First, the United States' intergovernmental immunity claim against the State Water Resources Control Board is prudentially ripe because it is fit for judicial resolution. Second, as the court held the claim is caused I'm sorry the plan is causing hardship to the Bureau of Reclamation. The board's arguments cannot rescue the district court's erroneous decision. The board presents this case as a complicated matter that is not ripe for the federal courts. Managing water quality in the Bay Delta is certainly a dynamic and complex issue but the thrust of the issued in 2018 has singled out the Bureau of Reclamation for less favorable treatment compared to other water users and dischargers. As it did in 2021 when this court reversed the district court's partial stay under Colorado River this court should allow the United States' claim to proceed. So the district court you know actually agreed with you on a lot of points but where it got hung up was on this idea that we really need to have more proceedings to be able to put in context I guess this the whether this rule is really discriminatory in a more global sense. How do you address that? Thank you, Your Honor. Yes that is true the the court did agree with us on the hardship factor as well as whether administrative proceedings would be interfered with. However with in terms of factual development the government's position is that no further factual development is needed at this juncture. The the terms of the amended plan are discriminatory on their face the court need look look no further than the amended plan. For example on page 409 to 410 of the excerpts of record it makes clear that the Bureau of Reclamation objective for electrical conductivity which is usually referred to as EC is 0.7 from April through August and 1.0 EC for the remainder of the year. But the district court seemed to think well look there's don't we need to know about how other people are going to be treated in these ultimate proceedings to be able to assess whether this facially discriminatory rule really I guess affects you in a material way. A couple of responses, Your Honor. First our position is that they're the comparators are already in place and that's evident from the text of the plan as well. All of the other water users and dischargers for the Bay Delta are required now to meet the 1.0 standard which is a relaxed standard from the standard that they had previously been required to meet. So the comparators are already established by the terms of the plan. Can I ask a point of clarification is it each water user would necessarily be subject to the more relaxed 1.0 standard or that there's an overall relaxed 1.0 standard and the differential water rights are yet to be determined at by later proceedings? It's more the latter Your Honor. So this is this gets to my question as I was thinking about the relevant case law to apply like United States versus Washington a recent case about Kings County. The analysis seems to be not just whether a provision is facially discriminatory or or on its face disfavors the U.S. government but whether in fact there are actual burdens that the U.S. government faces that are unique relative to other people. And it's the second half and I wanted to ask if you agree with that with that framing of it and and if so how do we know just yet because we haven't yet determined or the Water Board has not yet determined how this will play out vis-a-vis the U.S. and other water rights holders. I think this comes down to the fundamental perhaps the fundamental dispute here is whether the the plan is has effect right now and from the United States is understanding position is that the amended plan does have legal effect now and the Bureau of Reclamation views itself as bound by the 0.7 standard from April to August and 1.0 for the remainder of the year and it is suffering a hardship as a result of having to meet that more stringent standard as compared with other users. Let me pose it this way the the 0.7 standard is the standard that Reclamation has had to use since 1995. So if the Water Board had never changed never made any 2018 amendments we wouldn't be calling Reclamation or you wouldn't be calling Reclamation's requirements to be an injury would you? Correct. It's only it's only an injury in relation to if there's disparate disfavored treatment going on and I guess that's the question that I have is how do we know that that will actually take place you know for example suppose the Water Board decides and I don't know if this could happen or not suppose the Water Board decides through administrative processes that some people should have a 0.7 standard for some of the time and others have a 1.0 standard. If there are other parties that also have to comply with a 0.7 standard does the US government have an intergovernmental immunities claim? Well I think if there were if the plan contemplated other parties having to meet that more stringent standard perhaps we would not have a claim. I think the fundamental point here is that the the plan itself is going to govern all future implementation so as the board is implementing the plan going forward it will be governed by the standards that have been established in the plan. Right but I mean but you said a moment ago that the the latter was what your interpretation of the plan was which is that there's an overall 1.0 standard for the interior Delta and that might mean well this might be my add-on that might mean that there are differential treatments of different water rights holders within the Delta such that someone else could also have a 0.0 requirement is that is that possible? I do not my understanding is that it would it's possible that there could be some condition on another water user that would help at some point in the future relieve the burden on the Bureau of Reclamation but that's in the future and that's what we would deem to be fairly speculative. Our position here is that the plan since it was issued and went into legal effect in early 2019 has been working the discrimination against the Bureau of Reclamation. Is the plan essentially like a regulation that binds the board and these other proceedings? I think that's a fair way to characterize it your honor that this would be the certainly for the Bureau of Reclamation bound by the terms here I think it's from the just the text of the the amended plan it says that the Bureau of Reclamation shall be required to continue to comply with these salinity levels as a condition of its water rights and I think this goes to one of the points that the the board has tried to make on in opposing our appeal here is this idea that it's possible that Reclamation itself could have an amended amendment to its water rights but we submit that that is foreclosed based on the text that I just read from pages 409 and 410 of the record that any attempt to alter the standard the water quality objectives that apply to the Bureau of Reclamation would would be denied in other words it would be a futile position. Is there some mechanism to get this amended rule changed like some state law mechanism? I think the I'm not aware of a state law mechanism I believe there would be the simplest way to change this would be to amend the plan and I think that that goes to the sort of the the heart of our contention here is that this is a final plan and the only way to change these objectives that have been outlined both for Bureau of Reclamation and all the other users would be to amend the plan there's really no other way for the reclamations. And I mean that is that is my understanding is there is a state law process for challenging an amended plan? Well we're it's regarded as a final some kind of final rule for purposes of a state law challenge. Well we're what we're asking here is that is she we're asking the federal government to have our claim heard in the federal courts you know asserting jurisdiction under 28 USC 1345 like our discrimination claim to be heard in federal district court. So we believe that's the the best path forward for resolving our allegations about the discriminatory treatment here. Do we know who the relevant comparators are for purposes of deciding whether this plan discriminates against the federal government? Yes your honor we do have the comparators the all the other users all the other water users and dischargers who are now governed by the amended plan which as I said has been adopted by the board and and given legal effect by the Office of Administrative Law that creates the set of comparators that would be in front of the the federal district court if it were to hear our intergovernmental immunity claim on the merits. For example give me one comparator that it has been treated differently. I don't have a I think any other any other entity whether it's the the state of California or any other entity that an irrigation district is discharging water or is using water and then discharging the remaining water any of those users would be in this category of other users. Who would that be specifically? I think I don't know all the the players in the on the in the district court proceeding that we're undergoing. I mean who would we compare the government federal government to? Well the I again I come back to the it was one of the irrigation districts was the Merced irrigation district the I think the fundamental contour of our claim is that this is every other user regardless of who it is in in the Bay Delta has a relaxed standard compared to the United States and so that's those are all of those dischargers are the comparators. What do you what's your best case for the proposition that we can look at a regulation that seems facially discriminatory but don't need to see whether the U.S. has actually been burdened uniquely in some kind of way relative to other comparator comparators? Well I don't think we're saying that the court needs to does not need to engage in a comparison. We understand that sort of a fundamental part of the intergovernmental immunity claim. Of the relative burdens. Right. But I guess to the questions that the panel has been posing the policy seems to indicate that others as a group would be subject to this more relaxed standard but you haven't identified a particular water holder that will actually be subject to the unless your assertion is you know for a fact that every single other water holder is going to be subject to the revised relaxed 1.0 standard. All others would be and this goes back to my my point about the having legal effect. All other users from our perspective are now bound by that. There may be steps to achieve that standard down the road. There may be steps to implement that objective down the road but in implementing it the board will be governed by the relaxed standard for every other user. I think that's the thrust of our of our argument when it comes to other comparators. If I could reserve the remaining time for about all. Thank you. Good morning your honors. Dylan Johnson, Deputy Attorney General for the state of California on behalf of the California State Water Resources Control Board. I'd like to begin by addressing what I think is a misunderstanding which we've tried to clarify in our brief but about the difference which some of these questions your honors were getting to or asking gets to which is the difference between the objective itself which is in the nature of the regulation and the implementation measure which is what we're talking about when we refer when reclamation refers to the provision that addresses them specifically in the plan. Now that distinction is made on one hand fairly clearly because the plan itself is made up of primarily two components the establishment of water quality objectives and the program of implementation which talks mostly in general terms about how the board is going to get to achieving those objectives. So what the board did in 2018 is it changed the objective for the April through August time period from 0.7 to 1.0. So it changed that overall regulation but that does not dictate what the board needs to do as a matter of using its implementation authority in the second step of its process. Now reclamation was addressed in the plan specifically in the program. I will also note that the Department of Water Resources was also addressed specifically so it's not just reclamation. It happens to be the case that due to the size of the Central Valley Project and the State Water Project which is what the department California Department of Water Resources runs and the historic interaction with salinity in the Southern Delta which is in our brief is discussed that the Central Valley Project had as a primary purpose going back decades controlling salinity. There are unique factors at play for these two projects that made calling them out specifically in the program of implementation more appropriate. Well that I mean I think that kind of gets to the key issue because on its face the plan just makes a distinction right between the federal government and everybody else. I don't think that's disputed. Do you agree? I would. On this point. It treats them differently in that it names them specifically. Right but it imposes a different salinity standard than on everyone else. No your honor the salinity standard the objective is 0.7 and it applies across the the Bay Delta essentially this watershed. The implementation measure. Isn't the United States subject to a more stringent standard? The objective is the same what it's subject to is its pre-existing permit term. Right but so other people can get a more favorable one. It's possible but it's also possible and this is what the board discusses in the program of implementation that others could be subject to shared responsibility in some form something more stringent than point 1.0 because as a matter of trying to so let me back up and just talk about for a minute the hydrology here. As the court may be aware the way that lower San Joaquin River runs it goes from the south to the north toward the bay. So there's this point Vernalis which is essentially the point where the water enters the bay. The objective is designed to maintain salinity at that Vernalis point and at several points within the Delta. As that water travels further into the Delta and the bay it becomes more saline. So the board found in 2018 water needs to be at a cleaner fresher quality at Vernalis in order to achieve the objectives downstream. Which means even though the objective for the protection of agriculture in Vernalis needs to be 1.0 as a matter of implementing to get to 1.0 in the interior you're gonna need water that's even cleaner than that. So you refer to other proceedings when will those take place? The implementation proceedings we're referring to? We don't have a date certain for that yet and there are there have been initial steps we've talked about in the briefing here some of the FERC licensing proceedings that the board had imposed some terms related to salinity in those initial water quality certifications. But so when could this you know the United States has it has an argument a claim the theory that on the face of this amended plan there's discrimination. When could they reasonably get resolution of that? Once the implementation has occurred and so that we know. When would that be? I can't give you a date I don't know. How about even ballpark are we talking two years five years ten years? I would assume within five years if this is a complex process. Are you saying that we can't determine whether this is actually a discriminatory burden on the federal government until you do the implementation? That's correct your honor because by the I think one of the misunderstandings here that was evidenced by some of the things Mr. Turner said which I heard him say if the plan contemplated others having to meet 0.7 then they may not have a claim here. And that's exactly what the plan does it contemplates others having salinity burdens. It may not be 0.7 it may be something different but in the nature of an IGI claim which is factual a discrimination claim you also have to look at similarly situated parties. So it's not just a matter of saying it you have to actually adjust like calibrate who is the appropriate comparators. Well this may kind of more gets to the question of whether you should ultimately win on the on the intergovernmental immunity question. But all we're having to decide now is whether this should just go forward now or I guess it's some undetermined point. And that's what concerns me about the position here that it seems that on the face of the rule there's a distinction made between the United States and everyone else. It seems that there must be a good reason for that on your part on your clients part. I just don't know why we can't have that dispute resolved now as opposed to letting a case that was filed in 2019 sit around indefinitely. Maybe the United States will lose but at least it will be adjudicated. So the the prudential rightness factors include whether further factual development is necessary and that's exactly what the district court found here that you know and as has been pointed out the district court found in favor of the US on the other two prongs but still said I just essentially I don't have the facts here to adjudicate this claim because the plan on its face doesn't set the obligations for everybody else. Couldn't your client come forward with with the rationale to say listen it does even if the United States's interpretation of this amended rule is right here's why we did this and here's why this makes sense why do we need to wait and that and that could be evaluated experts could testify whatever needs to be done could be done but then it would be done and we wouldn't be be here in five years asking is it ripe yet is it ripe yet is it ripe yet? Because fundamentally again it may be that the board decides others have some salinity objective or some salinity responsibilities here that need to be compared if you try to adjudicate this right now without knowing what the rest of the water users are going to be subject to you're missing a fundamental piece and it wouldn't enable the court to fairly adjudicate the claim because it doesn't know what the actual facts are for what is the function of this amended rule in the proceedings does it not supply some kind of term of engagement you mean what are the yeah we have this amended plan so what what function does that have in the proceedings it sets the overall rules but they have to be implemented through mechanisms that actually tell water users okay you're gonna have to put this much water down the river you're not going to be able to divert this much during this time of year there's a lot of intricate complex things that go into assigning among all the water users how do we ultimately get to that overall rule so for another example the other major component the board amended in 2018 was the flow objective so it's how much water is going to have to come down the three major tributaries in lower San Joaquin River now that just says 40% flow but on its own it does nothing the board has to go and tell those water users okay here's how we're gonna get there here's what you're gonna have to do and so that's a product of this implementation proceeding through which the board exercises potentially adjudicatory authority it's all isn't it all done against the background of this amended plan which sets what the United States claims is a discriminatory rule it is done but again it hasn't it doesn't set the requirements for the others in the watershed what if what if this had just been a statute what if what if the legislature had passed this exact paragraph that we're talking about and it was a statute would we be having the same discussion about whether this is prudentially right because there needs to be more proceedings I mean I think if the statute called for or allowed for further development of the policies and how others can be treated then yes potentially because that's a pretty foreign idea though to say that when a statute a statute you know facially discriminates against the United States or frankly anybody that that they couldn't come forward with a claim at that time to make that challenge because of some possible future proceedings that might iron all this out well that's again I would I would I would dispute that it facially discriminates because the other step the other responsibilities haven't been established and we know the board operates in two steps it's not like the board just adopted this regulation and said this will probably be it but who knows maybe we'll do something else it's well established the board operates in two steps much like in Ohio Forestry the agency that was that issue there where it adopts the overall logging or the overall plan and then people have to come forward with logging proposals and the agency has to respond to those and that's the elements that those factual elements that are developed through responding to those plans that we have here in the implementation proceedings so can I clarify one thing so is it the case that if there's an overall objective of 1.0 that doesn't necessarily mean that each of the water rights holders would be held to that salinity objective it could vary depending on what the board thinks will ultimately achieve the 1.0 objective is that what you're saying that's what I'm saying yes your honor that you the board may decide that it needs to impose some kind of more stringent requirements on water users if necessary to get to 1.0 but if you said that Vesal is a Vesalus that that initial point Vernalis needed to be cleaner water can it be the case that water rights holders later on would also be subject to a 0.7 you know even if they're subject to 0.8 or 0.9 couldn't that potentially form the basis for a for an IGI claim yeah it very well could be that some are subject to something different in terms of meeting the salinity objective but that would have to be the facts you need to assess whether the u.s. has been treated unfairly because there are many factors that go into considering based on the size of the projects and so forth what would be a fair distribution of the why isn't it you know a live question now what on the theory that the amended plan sets a rule of engagement for future proceedings and that the rule of engagement disadvantages the United States at the outset because it doesn't the the plan does not limit the board in any way from assigning other responsibilities related to salinity to any other water users so if the plan said bait something like there is no opportunity for us to do anything else very definitive you know and that nature then yes maybe but the way the nature of the program of implementation is mostly general it says the board will do things like implement this through further water right adjudicatory proceedings or water regulatory proceedings it does not by and large identify everybody's responsibility so the omission of them for other water users is not an indication that the board has reached a definitive conclusion that it's only the u.s. and that's it that has a deal with salinity and the plan speak specifically to that by saying the board may consider the responsibilities for others in the watershed what's what's a little bit odd to me is if the water board wanted to switch over to a 1.0 standard overall why jump the gun seemingly by saying but you know res you know reclamation has to stick with 0.7 right now if there are things left to be determined why single out the u.s. in the first place so it has to do with the history of the Bay Delta and salinity and the history of how it was controlled going back many years largely at for analysis at least the CVP and reclamation were controlling salinity conditions there in many cases as a product of reclamations agreement to do this to some extent the d1641 but the reclamation was agreeing to do this within the backdrop of the water board thinking that point seven was the appropriate standard for agricultural purposes and it seemed like that started to change yes so the but the the the point I'm making is that there's this history here that results in them currently and and by the way just I want to make clear that the way the plan works since it's not self-executing the way this should be viewed as as we're all living in the world pre 2018 amendments because the board has done nothing to anybody yet reclamation is operating under its previous permit term and the reason that the board had these references again not only to reclamation but also to DWR was because of their history with respect to salinity in the Delta also the board is under a requirement under state law and to an extent the Clean Water Act to look at it hasn't there's an anti degradation policy and the board has to as part of its process in amending the objectives that consider whether this is going to a degradation of water quality and so as part of the findings related to that the board has to say well no determine if it will or will not and looking at reclamations previous permit term that provides a basis for finding that that water quality won't be degraded but that by no means excludes the board or prevents the board from considering shared responsibility as is done with DWR in the interior not at for now is because DWR doesn't control facilities that affect the water coming through Vernalis yeah I guess the question is those sound like reasons why you would set it up this way why can't this just be hashed out now again because your honor that we don't know what the comparators and what their responsibilities are yet because the board hasn't set them yet so there's no way to adjudicate this in a vacuum or it would be unfair to adjudicate it on the assumption the board's not going to responsibilities on anybody else because that's not how the plan should be read that's not what the plan is intended to say if we have other questions for you before you sit down okay thank you thank you you thank you I did want to address opposing counsel's point I think a lot of those go to the merits question I do think it's time for this case to be adjudicated in federal district court if there's a rationale we would like to hear what that rationale is for the discriminatory treatment paragraph 90 of your first amendment complaint you say the board asserted that the board had bound that reclamation was the principal cause of salinity exceedances at Vernalis and so is that what you want to adjudicate that the issue of whether there is a rationale for requiring reclamation to have a lower salinity rate because it's the biggest contributor at the Bernalis point yes that that would be the thrust of our intergovernmental immunity claim having the similarly situated users established the disparity established and then looking to see what the is for that disparate treatment that is that that would be the the heart of don't they say I mean isn't everybody acknowledge that that's the rationale well the United States would like a chance to challenge that determination if that is the rationale or maybe there are other layers to the rationale we would I see him over time if I go ahead yeah we would like the opportunity to to adjudicate this claim fully we just haven't had that opportunity I see that my time if I'm yeah do you want to make a concluding remark I would just say in closing your honor this case is less like Ohio forestry as my opposing counsel suggests it's not a two-step process we we do have immediate effects on the Bureau of reclamation it is more akin to some of the other case we cited such as loud versus Department of the Interior and association of interior irritated residents again we would submit that this case it's time this case is ripe and it's time for it to be heard and in district court thank you thank you thank you both the matter is submitted
judges: WARDLAW, BRESS, SANCHEZ